# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Robert E. Blackburn

Civil Case No. 06-cv-00873-REB-BNB

ADEBAYO ALARAPE,
MANGAR AMERDID,
SAMER EL-BAYOUMY, and
JAMES GRIEGO,

    Plaintiffs,

v.

GROUP 1 AUTOMOTIVE, INC., and
LUBY CHEVROLET CO.,

    Defendants.

## ORDER GRANTING MOTION TO COMPEL ARBITRATION

**Blackburn, J.**

The matter before me is **Defendants' Motion to Compel Arbitration and Stay Court Proceedings Pending Arbitration** [#18], filed July 20, 2006. I grant the motion.

### I. JURISDICTION

I putatively have jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question) and 1367 (supplemental jurisdiction).

### II. STANDARD OF REVIEW

The decision whether to enforce an arbitration agreement involves a two-step inquiry. First, I must determine whether the parties agreed to arbitrate the dispute. ***Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth***, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353, 87 L.Ed.2d 444 (1985); ***Williams v. Imhoff***, 203 F.3d 758, 764 (10th Cir. 2000). I then must consider whether any statute or policy renders the claims non-

arbitrable.  *Mitsubishi Motors Corp.*, 105 S.Ct. at 3355; *Williams*, 203 F.3d at 764. Plaintiffs attack the arbitration provision here on both fronts.

### III.  ANALYSIS

Plaintiffs are former employees of defendant Luby Chevrolet Co. ("Luby"), which was owned, through an intermediary limited liability company not party to this litigation, by defendant Group 1 Automotive, Inc.  Plaintiffs have alleged causes of action against defendants for discrimination on the basis of race, color, ancestry, and national origin and for retaliation under Title VII and 42 U.S.C. § 1981, as well as state law claims of outrageous conduct and negligent supervision, arising from their employment with Luby.  Defendants maintain that all these claims are subject to arbitration pursuant to an arbitration policy contained in Luby's Employee Handbook and accepted by each plaintiff in a signed Employee Acknowledgment and Agreement ("EAA").  The EAA provides, in relevant part:

> I also understand that the Company promotes a voluntary system of alternative dispute resolution which involves binding arbitration to resolve all disputes which may arise out of the employment context.  Because of the mutual benefits (such as reduced expense and increased efficiency) which private binding arbitration can provide both the Company and myself, I voluntarily agree that any claim, dispute, and/or controversy (including, but not limited to, any claims of discrimination and harassment, whether they are based on Colorado statute, Title VII of the Civil Rights Act of 1964, as amended, as well as all other state or federal laws or regulations) which would otherwise require or allow resort to any court or other governmental dispute resolution forum between myself and the Company . . . arising from, related to, or having any relationship or connection whatsoever with my seeking employment with, employment by, or other association with the Company, whether based on tort, contract, statutory, or equitable law, or otherwise . . . .shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, in conformity with the procedures of the Colorado statutes. . . .

> **I UNDERSTAND THAT BY VOLUNTARILY AGREEING TO THIS BINDING ARBITRATION PROVISION, BOTH I AND THE COMPANY GIVE UP OUR RIGHTS TO TRIAL BY JURY**.

(Def. Motion App., Exhs 8, 9, 10 & 12.) Each plaintiff signed a copy of this document during his employment with Luby.[1]  (*Id*.)

The first question, whether the parties agreed to arbitrate their dispute, focuses on two considerations: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute falls within the scope of that agreement. *See National American Insurance Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004); *Via Fone, Inc. v. Western Wireless Corp.*, 106 F.Supp.2d 1147, 1150 (D. Kan. 2000). Focusing on the first prong of this inquiry, plaintiffs argue that the arbitration clause is illusory because defendants reserved the right to unilaterally amend the arbitration policy. Under the law of this circuit, "an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." *Dumais v. American Gold Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002); *see also Gourley v. Yellow Transportation, LLC*, 178 F.Supp.2d 1196, 1202-03 (D. Colo. 2001).

Although this is an accurate statement of the law, that principle is not applicable here. Although the Employee Handbook states generally that defendants may "add, change or delete wages, benefits, policies and all other working conditions as it deems appropriate without obtaining another person's consent or agreement" (Plf. Resp. App.,

---

[1] Defendant also maintains that certain other documents which individual plaintiffs signed at various times during the course of their employment create binding arbitration agreements as well. However, since plaintiffs acknowledge the EAA as a potentially binding source of the authority to arbitrate, and because I find that document sufficient to create a viable arbitration agreement, I do not address these other putative agreements.

Exh. A at 2), the EAA makes clear that the agreement to arbitrate is not among that class of policies:

> I understand that this handbook represents the current policies, regulations, and benefits, and that *except for employment at-will status and the Arbitration Agreement*, any and all policies or practices can be changed at any time by the Company.  The Company retains the right to add, change or delete wages, benefits, polices and all other working conditions at any time (*except the policy of "at-will employment" and Arbitration Agreement, which may not be changed, altered, revised or modified without a writing signed by the President of the Company*).

(Def. Motion App., Exhs. 8, 9, 10, & 12 (emphases added).)  Contrary to plaintiffs' arguments, these two provisions are not inconsistent or contradictory.  Rather, the EAA fleshes out the more generalized language of the Employee Handbook by describing a subset of policies that are *not* subject to unilateral alteration or revocation by the employer.  **Cf. Dumais**, 299 F.3d at 1218 (fatal ambiguity found where employee handbook contained one provision allowing employer to unilaterally modify any provision thereof except employment at-will and arbitration agreement, and a second provision exempting only at-will employment from class of policies subject to unilateral modification).

Moreover, the agreement is not illusory simply because defendants retained the right to alter or amend the policy based on "a writing signed by the President of the Company."  An employee manifests his agreement to such modifications in the employer's policies by continuing his employment with knowledge of the modification.  **See Frymire v. Ampex Corp.**, 61 F.3d 757, 769-70 (10th Cir. 1995) (interpreting Colorado law), **cert. dismissed**, 116 S.Ct. 1588 (1996).  Indeed, other district courts within this circuit have found provisions that merely require advance notice of changes

to the company's arbitration policy are not illusory under the principle announced in *Dumais*.  See  *Gratzer v. Yellow Corp.*, 316 F.Supp.2d 1099, 1106 (D. Kan. 2004); *Pierce v. Kellogg, Brown & Root, Inc.*, 245 F.Supp.2d 1212, 1215 (E.D. Okla. 2003).

For these reasons, I conclude that each plaintiff is party to a valid agreement to arbitrate.  Plaintiffs do not argue, nor could they, given the breadth of the arbitration provision, that their claims are not encompassed by its scope.  Therefore, I find that the parties agreed to arbitrate the claims plaintiffs have asserted in this lawsuit.  Plaintiffs, however, maintain that the arbitration agreement is nevertheless unenforceable because it provides for cost-splitting, includes confidentiality provisions, and precludes judicial review of the arbitrator's decision.  None of these arguments is ultimately persuasive.  Nothing in the EAA can be read to require fee-splitting, and indeed, defendants have agreed to bear the cost of the arbitration.  (*See* Def. Motion App., Exh. 13.)  Plaintiffs offer no authority to support their contention that the requirement of the EAA that "all communications during or in connection with the arbitration proceedings are privileged" is contrary to the policies of Title VII.  Finally, the EAA merely provides an additional level of appellate-like review by allowing either party to seek review by a second arbitrator of the original arbitration decision.  Nothing therein precludes or limits the parties' rights to seek judicial review of the arbitrator's final decision.

The Federal Arbitration Act provides that "[i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which the suit is pending . . . shall on application of one of the parties stay the trial of the action . . ."  9 U.S.C. § 3. Because all plaintiffs' claims in this lawsuit are arbitrable, and because defendants have

so requested, I am required to stay this action pending arbitration.[2]  However, pursuant to D.C.Colo.LCivR. 41.2, I will administratively close this case, subject to reopening for good cause.

**THEREFORE, IT IS ORDERED** as follows:

1. That **Defendants' Motion to Compel Arbitration and Stay Court Proceedings Pending Arbitration** [#18], filed July 20, 2006, is **GRANTED**;

2. That the parties are **ORDERED** to proceed to arbitration of plaintiffs' claims;

3. That this case is **STAYED** pending the outcome of the arbitration; and

4. That this case shall be **ADMINISTRATIVELY CLOSED** pursuant to D.C.COLO.LCivR 41.2, subject to reopening for good cause.

Dated October 19, 2006, at Denver, Colorado.

                                        **BY THE COURT:**

                                        **s/ Robert E. Blackburn**
                                        **Robert E. Blackburn**
                                        **United States District Judge**

---

[2] Despite the seemingly mandatory language of section 3, the majority of federal courts hold that a district court may dismiss rather than stay a complaint when all claims therein are arbitrable.  **See, e.g.**, **Choice Hotels International, Inc. v. BSR Tropicana Resort, Inc.**, 252 F.3d 707, 709-10 (4th Cir. 2001); **Green v. Ameritech Corp.**, 200 F.3d 967, 973 (6th Cir. 2000); **Fedmet Corp. v. M/V BUYALYK**, 194 F.3d 674, 678 (5th Cir. 1999); **Bercovitch v. Baldwin School, Inc.**, 133 F.3d 151, 156 & n.21 (1st Cir. 1998); **Sparling v. Hoffman Construction Co.**, 864 F.2d 635, 638 (9th Cir. 1988); **Black and Veatch International Co. v. Wartsila NSD North America, Inc.**, 1998 WL 953966 at *4 (D. Kan. Dec. 17, 1998).  **But see Lloyd v. Hovensa, LLC**, 369 F.3d 263, 269-71 (3rd Cir. 2004).  Although the Tenth Circuit has not addressed this issue directly, it has intimated that a district court may dismiss when a party specifically requests dismissal rather than a stay.  **See Armijo v. Prudential Insurance Co. v. America**, 72 F.3d 793, 796-97 (10th Cir. 1995) (finding appellate jurisdiction from order dismissing a case in which all claims were referred to arbitration and distinguishing **Adair Bus Sales, Inc. v. Blue Bird Corp.**, 25 F.3d 953, 954-55 (10th Cir. 1994), in which appellate jurisdiction of order compelling arbitration was found lacking because defendant had requested a stay, not dismissal).

Because defendants here do not request dismissal, either principally or in the alternative, I am foreclosed by **Adair** from doing other than staying this action.